UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 25-25388-CIV-MORENO**

RECONDITION GEEK NA LLC,

Plaintiff,

vs.

DRIP CAPITAL, INC.,

Defendant.

_______________________________________/

**ORDER DENYING DEFENDANT'S MOTION TO STAY CASE—OR IN THE ALTERNATIVE, TO TRANSFER IT—AND TO DISMISS COUNT II**

This case arises from Defendant Drip Capital, Inc.'s filing of UCC financing statements in Florida asserting a security interest in the assets of Plaintiff Recondition Geek NA LLC, which Plaintiff contends were unauthorized and resulted in Amazon freezing its funds and inventory. Count I asserts a claim under section 817.535(8), Florida Statutes, and Count II asserts a claim for tortious interference with a business relationship. Defendant filed the underlying motion seeking to stay the case pursuant to the *Colorado River* doctrine, or in the alternative, to transfer it to the District of New Jersey, and to dismiss Count II (D.E. 14). Because the Court finds that Defendant has not demonstrated exceptional circumstances warranting abstention, has not established that this action could have been brought in the District of New Jersey, and has not shown that Count II fails to state a claim, Defendant's Motion is denied.

## FACTUAL BACKGROUND

Plaintiff Recondition Geek NA LLC is a Florida limited liability company engaged in the purchase and resale of consumer products through Amazon. Plaintiff uses Amazon's Fulfillment

by Amazon program and has an existing contractual and business relationship with Amazon pursuant to Amazon's Services Business Solutions Agreement.

Defendant Drip Capital offers supply chain financing to businesses. According to Plaintiff, Plaintiff has never entered into a financing agreement, loan agreement, or other business relationship with Defendant. Despite this, Plaintiff alleges that Defendant filed multiple UCC-1 financing statements in Florida identifying Plaintiff as a debtor and asserting a security interest in its assets. Plaintiff contends that Defendant filed those financing statements in an effort to obtain leverage arising from a separate contractual dispute between Defendant and entities associated with a family member of Plaintiff's owner. Plaintiff also alleges that Defendant notified Amazon of its claimed security interest, after which Amazon froze Plaintiff's funds and inventory and suspended its selling privileges.

## PROCEDURAL HISTORY

Plaintiff brings two claims against Defendant. Count I seeks relief under section 817.535(8), Florida Statutes, arising from the allegedly fraudulent financing statements. Count II asserts tortious interference with Plaintiff's business relationship with Amazon.

Defendant previously commenced an action in New York Supreme Court against several entities, including The R2O Group LLC, The R20 Group LLC, TRG Group Inc., HSYT Products LLC, and Plaintiff. Defendant alleges in the New York action that those entities are affiliates under common control and were operated interchangeably.

## DISCUSSION

Defendant alleges in the New York action that its financing agreement with the R2 entities gives it a security interest not only in the assets belonging to its contractual counterparties, but also in assets belonging to their affiliates, including Plaintiff. Defendant thus contends that its Florida

UCC filings against Plaintiff were authorized by its financing agreement and that the New York action will resolve the underlying question here of whether Defendant was entitled to file the UCC financing statement as to Plaintiff, and Plaintiff's assets, in Florida.

Plaintiff contends that it is not under common ownership with the R2 entities, never entered into Defendant's financing agreement, and never authorized Defendant to obtain a security interest in its properties. Plaintiff adds that it is named in only one substantive claim in the New York action, a claim for recovery of chattel under New York CPLR 7102, and that it has challenged personal jurisdiction in that proceeding.

Defendant now asks this Court to stay this action under the abstention doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Alternatively, Defendant asks the Court to decline to exercise jurisdiction under the Declaratory Judgment Act or to transfer the action to the District of New Jersey under 28 U.S.C. § 1404(a). Defendant separately seeks dismissal of Count II under Federal Rule of Civil Procedure 12(b)(6).

## I. *Colorado River* Abstention

"The *Colorado River* doctrine can apply only when concurrent state and federal litigation exists, and the federal litigation does not qualify for abstention under any of the three traditional abstention doctrines." *Gold-Fogel v. Fogel*, 16 F.4th 790, 800 (11th Cir. 2021). In such circumstances, "principles of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' may allow a federal court not to perform its otherwise 'virtually unflagging obligation . . . to exercise the jurisdiction given' it." *Id.* at 800–01 (quoting *Colorado River*, 424 U.S. at 817). Abstention under *Colorado River* is appropriate in "considerably . . . limited" and "exceptional" circumstances. *Colorado River*, 424 U.S. at 818.

The Eleventh Circuit employs a two-step inquiry to determine whether abstention is warranted. First, the Court determines whether the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). If they do, the Court then considers several factors to determine whether "exceptional circumstances" justify abstention. *Jackson-Platts v. General Electric Cap. Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013).

**A. The Proceedings Are Sufficiently Parallel**

Plaintiff argues that the New York action is not parallel to this case for several reasons. First, Plaintiff states that the New York action concerns alleged breaches of a financing agreement by third parties, and that Plaintiff is only named as a defendant in one claim for the recovery of chattel. Plaintiff notes that here, it seeks affirmative relief under Florida's UCC statutes and state law. Because the New York Court is not being asked to decide whether Defendant violated Florida's UCC or whether it tortiously interfered with Plaintiff's business, Plaintiff argues that abstention is unwarranted. Plaintiff further posits that because the New York action would not resolve all of Plaintiff's claims here, the two proceedings are not sufficiently parallel. Finally, Plaintiff argues that there are eight parties to the New York action and only two are present here, further counseling against abstention.

At this threshold inquiry, the Court is tasked with determining whether the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal*, 368 F.3d at 1330. As long as the proceedings are substantially similar, "[e]xact parallelism is not required." *Id.* at 1330 n.21. The Court concludes that the Florida and New York proceedings are sufficiently parallel to proceed to the second step of the *Colorado River* analysis.

Both parties to this action are parties to the New York action. Further, Defendant expressly alleges in the New York action that Recondition is an affiliate of the R2 entities and that Defendant's financing agreement provides a security interest in Plaintiff's assets. Thus, the central factual and legal questions overlap as both ask whether Defendant possessed enforceable rights to Plaintiff's inventory and property.

**B. Exceptional Circumstances Do Not Exist**

Next, the Court proceeds to *Colorado River*'s second step and weighs several factors to determine whether abstention is permissible. The Eleventh Circuit has described these factors as follows: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, . . . (6) the adequacy of the state court to protect the parties' rights[,]" and (7) "the vexatious or reactive nature of either the federal or the state litigation." *Ambrosia Coal*, 368 F.3d at 1331. This list is "not necessarily exclusive" and "no single factor controls." *Gold-Fogel*, 16 F.4th at 798. The balance should be "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

"The first *Colorado River* factor asks if one court assumed jurisdiction over property before the other court" and "applies only where there is a proceeding in rem." *Jackson-Platts*, 727 F.3d at 1141. Although the parties dispute security interests in inventory, Defendant has not shown that either this action or the New York action is an in rem proceeding. Accordingly, this factor does not support abstention.

The second factor is, at most, neutral. The inquiry here "concerns the inconvenience of the federal forum and focuses 'primarily on the physical proximity of the federal forum to the evidence

and witnesses.'" *Jackson-Platts*, 727 F.3d at 1141 (quoting *Ambrosia Coal*, 368 F.3d at 1332). The Southern District of Florida is not sufficiently inconvenient to justify abstention. Plaintiff is organized in Florida and the UCC financing statements challenged in this action were filed in Florida. Defendant argues that Plaintiff has little actual operational presence in Florida and states that Plaintiff's owners reside in New York. While those circumstances diminish the weight of Florida's convenience, they do not establish that this federal forum is sufficiently inconvenient to favor abstention. Defendant itself is a Delaware corporation with its principal place of business in California, and Plaintiff points out that Defendant's identified witnesses are based in California and India rather than New York or Florida. Thus, neither forum possesses an overwhelming convenience advantage.

As for the third factor, Defendant observes that simultaneous proceedings could produce inconsistent conclusions regarding whether its financing agreement authorizes a security interest against Plaintiff. *Colorado River*, however, does not permit abstention merely because parallel litigation creates some risk of inconsistent results. *Jackson-Platts*, 727 F.3d at 1142. To favor abstention, "the circumstances enveloping those cases [must] likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333.

Here, Plaintiff seeks relief here that is not presently requested in the New York action. Plaintiff asserts a cause of action under Florida law concerning financing statements filed in Florida and separately seeks damages for Defendant's alleged interference with its Amazon relationship. Plaintiff therefore argues that abstention would not eliminate piecemeal litigation. The Court agrees. Although the possibility of inconsistent rulings regarding Defendant's underlying security interest gives this factor some weight in favor of abstention, the factor does not provide the extraordinary justification that *Colorado River* requires.

The fourth factor modestly favors abstention. Although the New York action was filed first, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Plaintiff represents that, as of the date of its filing of its opposition, discovery had not commenced in New York and motions challenging the New York action remained pending. The New York action therefore has temporal priority, but the record does not establish that it has progressed so substantially toward resolution that this factor weighs heavily in favor of abstention.

The fifth factor provides little, if any, support for abstention. The claims before this Court arise under state rather than federal law. "But this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." *Jackson-Platts*, 727 F.3d at 1143. Federal courts sitting in diversity routinely determine issues concerning state UCC statutes and state tort law. Thus, the Court does not find that the Complaint details "the kind of complex law that raises thorny and difficult state law questions." *Id.* Further, Plaintiff brings its claims under Florida law, not New York law. Thus, this factor does not establish a reason to defer to a New York state court.

As for the sixth factor, the Court has no reason to conclude that the New York court cannot protect the rights of parties properly before it. "[B]ut '[t]he fact that *both* forums are adequate to protect the parties' rights merely renders this factor neutral.'" *Jackson-Platts*, 727 F.3d at 1143 (quoting *Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1998) (emphasis added)). Thus, this factor does not favor abstention.

Finally, the seventh factor does not favor abstention. Defendant contends that this action is reactive as Plaintiff filed this case only after Defendant had named Plaintiff as a defendant in New York. Defendant notes that Plaintiff and entities allegedly affiliated with it have initiated related

proceedings in three different courts to fragment litigation concerning Defendant's rights under the Agreement. The timing of the litigation provides some support for Defendant's characterization. The New York action preceded this action by approximately three months, and the Complaint here arises from conduct that is, according to Defendant, related to Defendant's efforts to enforce its security rights. But a later-filed action is not necessarily "vexatious or reactive" merely because it responds to an earlier lawsuit or involves overlapping subject matter. The litigation pattern here is not of the kind the Eleventh Circuit has found sufficiently vexatious or reactive to favor abstention. *See, e.g., Taveras v. Bank of America, N.A.*, 89 F.4th 1279, 1288–89 (11th Cir. 2024) (affirming the "conclusion that this third federal action, which was filed in violation of a prior district court order, is vexatious and reactive").

Considering the factors collectively, this case does not present the exceptional circumstances necessary for *Colorado River* abstention. The Supreme Court requires the balance to be "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. The Eleventh Circuit has further cautioned that *Colorado River* abstention should not be employed absent a sufficiently serious justification for departing from the ordinary "duty of a District Court to adjudicate a controversy properly before it." *Jackson-Platts*, 727 F.3d at 1140. Measured against that demanding standard, the Court finds that Defendant has not carried its burden of showing that exceptional circumstances exist such that abstention is appropriate. Accordingly, the Court denies Defendant's request for a stay under *Colorado River*.

## II. <u>Transfer to the District of New Jersey</u>

Defendant alternatively and "reluctantly" argues that if the Court finds that *Colorado River* abstention is unwarranted, that the Court should transfer this case to the District of New Jersey in accordance with 28 U.S.C. § 1404(a). (D.E. 14-1 at 14). Section 1404(a) permits transfer, "[f]or

the convenience of parties and witnesses, in the interest of justice" to a district in which the action "might have been brought." 28 U.S.C. § 1404(a). Courts are afforded broad discretion to determine whether transfer is justified under section 1404(a). *Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-22586-CIV-MORENO, 2015 WL 11233132, at *1 (S.D. Fla. Jan. 29, 2015) (citing *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1281–82 (S.D. Fla. 2012)). To prevail on a motion to transfer under section 1404(a), the Court must "determine whether the action could have been brought in the venue in which transfer is sought," and if so, "whether convenience and the interests of justice require transfer to the requested forum." *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013). This burden rests with the movant. *Id.* "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citations omitted).

Plaintiff argues that Defendant has not established why Defendant would have been subject to personal jurisdiction in New Jersey with respect to this action, emphasizing that Defendant is a Delaware corporation with its principal place of business in California and that Plaintiff's claims concern financing statements filed against it in Florida. Defendant responds that New Jersey has significant connections to the broader financing transaction. It alleges that R20 Group, LLC, one of the entities that entered into the underlying Agreement, is a New Jersey entity. It also states that the Agreement purportedly extends Defendant's security rights to Plaintiff, and that Defendant filed related UCC financing statements in New Jersey. Defendant also contends that R2-affiliated entities and their principals are located in New York and New Jersey. Defendant therefore states that it would not contest jurisdiction in New Jersey and that there is surely jurisdiction over it in New Jersey.

The question here is not merely whether New Jersey bears some relationship to the broader commercial dispute or whether Defendant would voluntarily litigate there. The threshold inquiry asks whether Plaintiff could have originally brought this particular action against Defendant in the District of New Jersey. *See Windmere Corp. v. Remington Products, Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985). "An action 'might have been brought' in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Id.* Subject-matter jurisdiction presents no obstacle because the District of New Jersey would possess the same diversity jurisdiction asserted here. The deficiencies concern personal jurisdiction and venue.

Defendant identifies meaningful New Jersey contacts surrounding the Agreement, but it does not develop the venue and personal jurisdiction analysis necessary to demonstrate that Plaintiff could have filed these claims against Defendant in the District of New Jersey. Defendant does not explain how its New Jersey contacts give rise to or relate to Plaintiff's claims regarding the allegedly unauthorized financing statements filed against Plaintiff in Florida or with Defendant's alleged interference with Plaintiff's Amazon relationship. Nor does Defendant establish that venue would have been proper there under 28 U.S.C. § 1391.

Defendant's willingness to litigate in New Jersey does not cure those deficiencies. *See La Potencia, LLC v. Chandler*, No. 22- 80417-CIV-RUIZ, 2022 WL 17417232, at *14 (S.D. Fla. Nov. 3, 2022) ("Defendants cannot consent to be sued after a suit is filed for purposes of a transfer under § 1404(a)."), *report and recommendation adopted*, 2022 WL 17415076 (S.D. Fla. Dec. 5, 2022); *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("We do not think the [§] 1404(a) phrase 'where it might have been brought' can be interpreted to mean . . . 'where it may now be rebrought, with

defendants' consent.'"). Because Defendant has not established that the District of New Jersey is a district in which this action "might have been brought," Defendant's motion to transfer is denied.

## III. Count II: Tortious Interference

Defendant moves to dismiss Plaintiff's claim for tortious interference with a business relationship under Rule 12(b)(6). Defendant argues that Plaintiff has not sufficiently alleged that Defendant's actions were motivated by malice because its actions had a clear economic motive.

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Detailed factual allegations are not required, but a complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted).

In Florida, "[a]n individual commits tortious interference with business relations if the individual: (1) acted improperly; (2) acted maliciously with the intent to injure; (3) compelled a third party to refuse to enter into a business relationship with the plaintiff; and (4) caused plaintiff to suffer a financial injury." *Elandia Intern., Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1331 (S.D. Fla.

2010) (citing *DeLong Equip. Co. v. Wash. Mills Abrasive Co.*, 887 F.2d 1499, 1519 (11th Cir. 1989)).

Defendant disputes only the malice requirement, arguing that the alleged interference was legally justified because Defendant acted to protect a legitimate economic interest. Indeed, Florida law recognizes a privilege to interfere where a defendant acts to protect an existing economic interest. *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224–25 (Fla. 3d DCA 1980). That privilege, however, does not extend to the use of "improper means." *Id.* at 1225.

Defendant contends that section 14 of its financing agreement expressly permitted it to assert a security interest against affiliates of the R2 entities, including Plaintiff. Defendant thus argues that submitting its UCC filing to Amazon was an effort to enforce a legitimate secured debt. The Complaint alleges the opposite. Plaintiff alleges that it never entered into any contract, loan, or financing relationship with Defendant and never authorized Defendant to obtain a security interest in its assets. (D.E. 1 ¶¶ 28–35). Further, the Complaint alleges that Defendant sought to use its UCC-1 filings to gain leverage in the New York action and that Defendant's submissions were made maliciously and with ill will. (*Id.* ¶¶ 37, 61).

At the Rule 12(b)(6) stage, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the Plaintiff's favor. *See Iqbal*, 556 U.S. at 678. The Court therefore cannot presently accept Defendant's affirmative defense as a means for dismissing Count II. Defendant correctly notes that an affirmative defense can support dismissal when the defense clearly appears on the face of the complaint. *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985). Here, however, the Complaint does not concede that Defendant possessed enforceable rights against Plaintiff. Rather, it alleges the contrary. Defendant's reliance on the Agreement does not resolve the issue at this stage. Even

assuming the Court may consider the Agreement because it is central to Plaintiff's claim and its authenticity is undisputed, Defendant's argument requires the Court to accept its disputed premise that Plaintiff is an R2-affiliate whose assets are subject to the Agreement's security provisions. The Complaint expressly alleges otherwise, and thus consideration of the Agreement does not establish Defendant's affirmative defense on the face of the Complaint. Accordingly, the Court finds that Count II plausibly states a claim for tortious interference and denies Defendant's motion to dismiss Count II.

**IV. Declaratory Judgment Act**

Defendant also argues that "after [the Court] dismisses . . . the Complaint's Count Two . . . the remainder of the Complaint seeks declaratory relief, and this Court has the discretion to abstain from hearing such claims" under the Declaratory Judgment Act. (D.E. 14-1 at 11–12). Because the Court denies Defendant's motion to dismiss Count II, Defendant's request for abstention under the Declaratory Judgment Act is denied.

**CONCLUSION**

For the reasons stated above, it is

**ADJUDGED** that Defendant's Motion to Stay Case—or, in the Alternative, to Transfer it—and to Dismiss Count Two is **DENIED**. It is further

**ADJUDGED** that Defendant shall file an Answer to the Complaint no later than **September 25, 2026**.

DONE AND ORDERED in Chambers at Miami, Florida, this 3rd of September 2026.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record